BARRY v. HARNESBERGER et al. In re McGUIRE et al. McGUIRE & SCHWARTZ v. BARRY.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1906.)

No. 1,236.

1. MORTGAGES—EFFECT OF FORECLOSURE SALE ON LIEN—ILLINOIS STATUTES.

Under the statutes of Illinois relating to foreclosure sales and redemption therefrom, as construed by the state Supreme Court, which establish a rule of property in the state binding on the federal courts, a sale under a decree foreclosing a mortgage exhausts and extinguishes the lien of the mortgage, and the same is not revived by a redemption from the sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 1682.]

2. SAME—REDEMPTION FROM SALE—LIEN OF DEFICIENCY JUDGMENT.

Real estate in Illinois was sold under foreclosure decree in a federal court, and was purchased by the mortgagee for less than the mortgage debt, and a deficiency judgment entered by the court against the mortgagors, as provided by the state statute. Hurd's Rev. St. Ill. 1905, c. 77, § 1, provides that, unless execution is issued on a judgment within one year from its rendition, it shall cease to be a lien on real estate. Within the year allowed for redemption from the foreclosure sale the mortgagors sold and conveyed the property by warranty deed to a third party, who took possession, recorded the deed, and made the statutory redemption from the foreclosure sale by paying into court the amount of the bid, with interest. Subsequently, and more than a year after the entry of the deficiency judgment, an execution was issued thereon and levied on the property. Held, that the same in the hands of the grantee was not subject to such execution, having been freed from the lien of the mortgage by the foreclosure sale, under the law of the state, and from the lien of the judgment, if any ever existed, by the failure to issue execution thereon within a year.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

In foreclosure proceedings had in the original suit herein, the complainant in that suit and appellee herein bought the premises in the original bill and this petition described for the sum of $800, and afterwards, on April 7, 1900, in the same proceeding, obtained a deficiency judgment against the defendants, the Harnesbergers, for the sum of $510.58, under the provisions of section 16, of chapter 95 of the statutes of Illinois (Hurd's Rev. St. 1905), which reads as follows, viz.: "16. Decrees for Balance—Execution. Sec. 16. In all decrees hereafter to be made in suits in equity directing foreclosure of mortgages, a decree may be rendered for any balance of money that may be found due to the complainant over and above the proceeds of the sale or sales, and execution may issue for the collection of such balance, the same as when the decree is solely for the payment of money. And such decree may be rendered conditionally, at the time of decreeing the foreclosure, or it may be rendered after the sale and the ascertainment of the balance due: Provided, that such execution shall issue only in cases where personal service shall have been had upon the defendant or defendants personally liable for the mortgage debt, unless their appearance shall be entered in such suits."

The language of the decree is: "It is further ordered by the court that the complainant have a personal judgment against Alice M. Harnesberger and William H. Harnesberger for the sum of five hundred and ten dollars and fifty-eight cents ($510.58), being the amount of said deficiency as shown by said master's report of sale."

No execution was issued upon this decree or judgment until April 8, 1903, a period of three years and one day. By section 1 of chapter 77 of the Illinois statutes (Hurd's Rev. St. 1905), entitled "Judgments, Decrees and Executions," it is provided that "when execution is not issued on a judgment within one year from the time the same becomes a lien it shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within said seven years, and shall become a lien on such real estate from the time it shall be delivered to the sheriff or other proper officer, to be executed."

On February 25, 1901, the Harnesbergers, being still in possession of said premises, executed and delivered to petitioners (appellants herein) a warranty deed of said premises, together with a power of attorney, authorizing them, "for us and in our name, place, and stead, to redeem" said lot from said sale, and also thereupon delivered possession of said premises to appellants, who thereupon entered upon said premises and proceeded to make valuable improvements thereon and sold a part thereof to one Schwartz. On the same day appellants paid to the master the sum of $844.00, being the full amount required for redemption of said land, and also presented to him the power of attorney, and notified him that they had received and caused to be recorded a deed from the Harnesbergers thereof. Whereupon the master took the money and reported such redemption to the court as made under said power of attorney, making no mention of the deed, which report was approved. Later the master filed a corrected report in this behalf. On August 14, 1900, appellee Barry, receiver, assigned and transferred to one Prickett said deficiency judgment. On April 18, 1903, more than two years after said redemption, said Prickett took out execution on this said deficiency judgment, and the marshal proceeded to levy upon said premises to satisfy the same, claiming that appellants stood in the shoes of the Harnesbergers, and, in order to redeem, must pay the full amount of the original mortgage debt, and the redemption "left the title in the property in them [the Harnesbergers] and it would still be subject to the payment of the deficiency judgment, for that judgment was a lien against all of the property of the Harnesbergers within the Southern district of Illinois. * * * Therefore my contention is that no odds whether we view it from the standpoint that they could not redeem from the mortgage, or whether we view it from the standpoint that this is an execution against the Harnesbergers, it is levied upon their property and there is no reason why the court should have quashed the levy."

On May 23, 1903, appellants filed their petition to quash said levy, for which a stipulation of facts was substituted on November 11, 1905. Afterwards such proceedings were had that the court refused the prayer of said petition, from which ruling this appeal was taken. The assignment of errors is limited to this one question.

Hosea V. Ferrell, for appellant.
F. M. Youngblood, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge, having stated the case, delivered the opinion of the court.

Appellants made redemption of the lands in question as assignees of the defendants,' Harnesbergers,' equity of redemption in pursuance of the terms of the Illinois statute. This statute lays down a rule of property, and has received interpretation at the hands of the Supreme Court of Illinois in the cases of Seligman v. Laubheimer, 58 Ill. 124; Ogle v. Koerner, 140 Ill. 170–181, 29 N. E. 563; Lightcap v. Bradley, 186 Ill. 510–526, 58 N. E. 221. That in such a case this court will

follow the state court decisions is too well settled to require citation of authorities. In Seligman v. Laubheimer, supra, the court says:

"The second mortgagee, who redeemed from the sale, was the grantee of the mortgagors. By express provision of the statute, he had the right to redeem the lands, by the payment of the amount bid by plaintiff in error [who was the first mortgagee and who purchased the property at the sale for less than the decree]. If he had filed a bill in chancery to redeem, he could then be compelled to do equity, by the payment of the prior mortgage debt, before he could obtain any relief. But this redemption was a statutory right. Upon the payment of the amount bid, with interest, the original certificate of purchase was null and void. The equity of redemption established by the courts is entirely different from the statutory right. The one is governed by principles of equity jurisprudence; the other is controlled, in its operation and, ef-effect entirely by the statute. In the enforcement of the one right, the party must pay all that is equitably due; in the other he need only comply with the statute."

In the case of Ogle v. Koerner, supra, it is said:

"But where the redemption is made by a party not liable upon the mortgage debt, the mortgage lien having been exhausted, the property cannot be subjected a second time to the satisfaction of the same lien. The party redeeming does so for his own benefit, and the holders of the senior mortgage, having, by the sale, become entire strangers to the property, are in no position to derive any advantage from the redemption. The sale having been made at public auction, and in the manner prescribed by statute, the presumption, as between the senior and junior incumbrances, is a conclusive one that the property has produced its entire value, and, the value having been once applied to the senior mortgage, the lien has accomplished its full purpose and is thereafter functus officio."

In Lightcap v. Bradley, supra, this language is used:

"It is true that, if the premises are redeemed by the mortgagor, they become like any other property owned by him and may be subject to execution and sale for a deficiency; but that is because they belong to the debtor, and not on account of any lien by virtue of the mortgage. A redemption by any person not liable for the debt would free them absolutely, so that they could not even be levied upon by execution for a deficiency."

And again, in the same case (Bradley v. Lightcap, 201 Ill. 511, 66 N. E. 548), it is said:

"The sale discharged the land from the trust deed and transferred the lien created by contract into a statutory lien by the certificate of purchase, and the land was released as security for the balance of the debt."

From these authorities it is evident that the original mortgage lien was fully discharged by the master's sale. This was a proceeding under the statute, and appellants, as grantees of the mortgagee, were not required to pay the full amount of the mortgage indebtedness before they could redeem. They paid all that the receiver seems to have deemed the land to be worth, and all that the statute required. While there was an irregularity in the steps taken by appellants in making the redemption, it is clear from the whole record that these were mistakes merely. There is absolutely nothing in the record to show that the Harnesbergers had, or ever have claimed to have, any interest in the premises subsequent to the sale of the equity of redemption to appellants. The fact that appellants received and recorded the deed overcomes the error, if it was such. It seems clear, and we hold, that title

passed to appellants through the warranty deed and the, redemption proceedings. The deficiency judgment was not a lien upon any of the Harnesbergers' property between the dates of April 7, 1901, and April 18, 1903, a period of 2 years and 11 days. The language of the court in the foreclosure decree awarding an execution for any deficiency that might arise after sale is of no force, since the statute authorizes only a judgment or decree for the deficiency. This judgment or decree then became like any other judgment or decree, and subject to the same conditions as to its lien. Therefore it cannot be claimed that it was a lien at the date of the levy upon any interest the Harnesbergers may have had in the premises prior to the conveyance to appellants. We do not mean to intimate that any such lien could attach. It appearing then, first, that the lien of the mortgage was extinguished by the foreclosure proceedings; second, that by conveyance and redemption under the statute title passed to appellants; third, that appellants have been ever since the redemption in open and adverse possession of the premises in question; fourth, that no lien can be claimed as against their interest therein—it follows that the levy was without warrant of law, and should have been quashed by the Circuit Court.

The ruling appealed from is reversed, with directions to the Circuit Court to quash the levy.